**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN DOE 1, and<br><br>JOHN DOE 2,<br><br><br>*Plaintiffs*,<br><br><br>v.<br><br>THE ISLAMIC REPUBLIC OF IRAN;<br><br>THE ISLAMIC REVOLUTIONARY GUARD CORPS,<br><br>EYED ALI HOSSEINI KHAMENEI,  The Supreme Leader of the Islamic Republic of Iran,<br><br>HOSSEIN SALAMI, Commander in Chief of IRGC;<br><br>c/o Ministry of Foreign Affairs<br>Khomeni Avenue,<br>United Nations Street<br>Tehran, Iran<br><br>*Defendants*. | Case #: 1:20-cv-3043 |

**COMPLAINT**

1.      Plaintiffs, John Doe 1 and John Doe 2, by and through undersigned counsel, bring suit against Defendants the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps ("IRGC"), and IRGC Commander-in-Chief Hossein Salami (collectively "Defendants") under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA"), for severe personal injuries, wrongful death, and other irreparable harm suffered as a result of Defendants' unlawful acts of terrorism, aircraft sabotage, extrajudicial killing, and other torts against Plaintiff and Plaintiffs' immediate relatives.

2.      Plaintiffs John Doe 1 and John Doe 2 bring this complaint in order to recover for the actions of the Iranian government, IRGC, and its agents in the unlawful targeting and downing of Ukraine International Airlines Flight PS752 on January 8, 2020, resulting in the deaths of 176 passengers and crew. Plaintiff John Doe #1's brother ("John_Doe_1_Brother"), along with his wife, and his niece were passengers aboard the flight, and all died in the crash. Plaintiff John Doe #2's sister ("John_Doe_2_Sister") was a passenger aboard the flight, and died in the crash. The Iranian government has acknowledged targeting of Flight PS752

1

and shutting down the aircraft with two missiles.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter and over Defendants pursuant to 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2) and 1605A(a)(1), which create subject matter jurisdiction and personal jurisdiction for civil actions for personal injuries against State Sponsors of Terrorism and their officials, employees, and agents.

4.    28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for personal injury and related torts.

5.    The venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(4).

## PARTIES

6.    Plaintiff John Doe 1 is the brother of Flight PS752 victim "John_Doe_1_Brother", who perished in the crash of the aircraft outside of Tehran, Iran after Iranian air defense forces fired two missiles at the civilian aircraft. Decedent John_Doe_1_Brother was a Canadian citizen at the time of his death. Plaintiff is a U.S. Citizen, now and at the time of the incident.

7.    Plaintiff John Doe 2 is the brother of Flight PS752 victim "John_Doe_2_Sister", who perished in the crash of the aircraft outside of Tehran, Iran after Iranian air defense forces fired two missiles at the civilian aircraft. Decedent John_Doe_2_Sister was a Canadian citizen at the time of her death. Plaintiff is a U.S. Citizen, now and at the time of the incident.

8.    Defendant the Islamic Republic of Iran is a foreign state. Iran is a theocratic republic with an elected head of government and a head of state—the Ayatollah or Supreme Leader—appointed for life by a council of theologians. The Supreme Leader controls the Guardian Council of the Constitution, which interprets the Iranian Constitution, supervises elections (including determining which candidates may run), and exercises significant influence over the legislative, executive, and judicial branches of government, as well as the military and IRGC.

9.    Defendant Seyed Ali Hosseini Khamenei has been Iran's Supreme Leader since 1989. He was previously the President of Iran from 1981 to 1989. As Supreme Leader, Khamenei

is the head of state of Iran and the commander-in-chief of its armed forces. For this reason, he is considered the most powerful political authority in the country. As Supreme Leader, Khamenei can issue decrees and make the final decisions on the main policies of the government in fields such as economy, the environment, foreign policy, and national planning within Iran. Khamenei has direct control over the executive, legislative and judicial branches of government, as well as the military and media. President Donald J. Trump imposed secondary sanctions on Ali Khamenei stating that: "in light of the actions of the Government of Iran…to promote international terrorism…hereby order: Section 1. (a) All property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in: (i) the Supreme Leader of the Islamic Republic of Iran and the Iranian Supreme Leader's Office (SLO)". Exec. Order No. 13876, 84 Fed. Reg. 30574 (June. 26, 2019).

10.     Defendant the Iranian Revolutionary Guard Corps or IRGC is a military organization under the control of the Guardian Council. The IRGC was established in the wake of the Islamic Revolution to act as the country's "ideological custodian"[1] and is generally understood to be one of the most reactionary, powerful, and oppressive factions of the Iranian Government. The IRGC fields an army, navy, air force, and intelligence service, and it conducts foreign operations through its paramilitary arm, the Quds Force. The Quds Force has primary responsibility for arming pro-Iranian military groups across the Middle East and beyond, and has been designated by the U.S. Department of Treasury as a sponsor and supporter of terrorism.[2]

## STATEMENT OF FACTS

11.     On January 3, 2020, a United States drone strike near Baghdad International Airport resulted in the death of Iranian major general Qasem Soleimani, commander of the Quds Force of Iran's Islamic Revolutionary Guard Corps (IRGC).

12.     Five days later, on January 8, 2020, Iran launched retaliatory missile strikes on U.S.

---

[1]. Greg Bruno et al., *Iran's Revolutionary Guard*, COUNCIL ON FOREIGN RELATIONS (Jun. 14, 2013),

[2]. U.S. DEP'T OF TREASURY, *Blocking Property and Prohibiting Transactions with Persons who Commit, Threaten to Commit, or Support Terrorism*, www.treasury.gov/resource-center/sanctions/Programs/Documents/terror.pdf.

positions in Iraq, and according to Commander of the Aerospace Force of the IRGC, was "totally prepared for a full-fledged war."

13.    Ukraine International Airlines ("UIA") passenger flight PS752 was traveling from Tehran to Kyiv, Ukraine on January 8, 2020 and was scheduled for departure from Imam Khomeini International Airport at 05:15 local time but was delayed for nearly an hour, departing at 06:12 local time.

14.    Shortly after takeoff, the aircraft was targeted and shot down by the IRGC. All 176 passengers and crew aboard were killed.

15.    Following the crash of Flight PS752, the Iranian government initially denied responsibility for the crash.

16.    However, following video evidence of two Iranian Tor-M1 surface-to-air missiles used to shoot down the aircraft, on January 11, 2020, Iranian President Hassan Rouhani admitted that the IRGC and Iranian military were responsible for the "mistaken" targeting and launch.

17.    In a July 13, 2020 interim report, the Iranian government claimed that "human error" in the military's weapons system caused the aircraft to be erroneously identified as a cruise missile.

18.    In response, Canadian Foreign Minister Francois-Philippe Champagne stated, "It cannot just be the result of a human error. There is no circumstance under (which) a civilian aircraft can be downed just by the result of human error in this day and age . . . All the facts and circumstances point to more than just a human error".

19.    Recorders from Flight PS752 have been analyzed by French accident analysis bureau BEA, confirming Iran's interference with the aircraft. The data was not released to media or family members.

20.    Plaintiffs assert that Iran's attack on Flight PS752 was a deliberate act of terrorism in the context of the 2019-2020 Persian Gulf Crisis, and that the deaths of the passengers and crew were an intended outcome of this terrorist act. The Iranian government caused these deaths by committing acts of torture, extrajudicial killing, and aircraft sabotage, as defined under FSIA §1605.

## COUNT I
## 28 U.S.C. 1605A(c), PRIVATE RIGHT OF ACTION

21.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

22. Iran is a state sponsor of terrorism as described in 28 U.S.C. §1605A(a)(2)(A)(i).

23. Iran and its agents were acting within the scope of their office, employment, or agency in committing the acts alleged herein, including, but not limited to, the identification, targeting, and firing upon Flight PS752, as well as in the subsequent initial denials of responsibility.

24. Defendants have acknowledged responsibility for firing the two surface-to-air missiles that caused Flight PS752 to crash, killing all persons on board. Such an act was deliberately done with the intent to cause the aircraft to crash, regardless of any arguments Defendants may raise to claim that the aircraft was mistakenly identified as a cruise missile.

25. Plaintiffs assert that Defendants could not have reasonably mistaken the approximately 129ft Boeing 737-800 aircraft—the most widely used narrowbody aircraft—with a cruise missile, and instead intentionally targeted a civilian aircraft with military weaponry.

26. Plaintiff assert that Defendants act intentionally to have human life at risk to potentially prevent a potential U.S. attack. Defendant failed to clear Iranian air space of commercial flights against International Aviation Treaties.

27. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of IRGC and its agents whose acts were funded and directed by the Islamic Republic of Iran, and other Iranian's government entities, Plaintiffs have suffered, inter alia, mental anguish and emotional pain and suffering due to the deaths of their relatives resulting from Iranian Defendants' acts, and additionally due to Defendants' initial denial of responsibility, which further caused confusion and anguish to Plaintiffs.

28. Pursuant to 28 U.S.C. §1605A(c), Plaintiffs, who are nationals of the United States, may assert a cause of action against Defendants for personal injury or death to their relatives, passengers John_Doe_1_Brother and John_Doe_2_Sister, caused by acts of aircraft sabotage and extrajudicial killing, if performed or provided by an official, employee, or agent of Iran while acting within the scope of his or her office, employment, or agency.

29. Accordingly, as a result of Defendants' actions, Plaintiffs seek compensatory and punitive damages. Plaintiffs are asking for One Hundred Million USD ($100,000,000) in compensatory damages and One Billion USD ($1,000,000,000) in punitive damages.

## COUNT II
## ASSAULT AND BATTERY

30. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

31.     "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such imminent apprehension."[3]

32.     The passengers and crew of Flight PS752 were deliberately fired upon by Defendants using two military missiles, causing a violent and catastrophic collision and crash to earth. Recordings from the aircraft demonstrate that the two missiles were launched approximately 30 seconds apart, indicating that those aboard had time to contemplate the threat and to experience fear for their lives. All aboard were killed due to this act of violence, constituting both assault and battery.

33.     Extrajudicial killing, under the FSIA, constitutes assault because "acts of terrorism are, by their very nature, intended to harm and to terrify by instilling fear of further harm."[4]

34.     Plaintiffs seek damages to compensate for continuous pain and suffering to be calculated at trial.

**COUNT III**
**EXTRAJUDICIAL KILLING UNDER TVPA**
**Against Defendants Seyed Ali Hosseini Khamenei**
**And Hossein Salami**

35.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

36.     The Torture Victim Protection Act of 1991 ("TVPA") provides a civil right of action for individuals who have been subjected to torture or extrajudicial killing. "An individual who, under actual or apparent authority, or color of law, of any foreign nation subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death." TVPA Section 2(a)(2).

37.     The TVPA defines extrajudicial killing as:

> "[A] deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation." TVPA Section 3(a)

38.     The passengers and crew of Flight PS752 were all killed when the Iranian military

---

[3]. Restatement (Second) of Torts § 21 (Am. Law Inst. 1965).

[4]. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 76 (D.D.C. 2010).

deliberately targeted and shot down the aircraft. Flight PS752 was a commercial, civilian aircraft with no military significance under international law. The targeting of the aircraft and subsequent killing of every person on board was done in direct violation of international law.

39. Defendants directed the attack against civilian on a commercial flight, this airline sabotage took the life of 176 passenger, including Plaintiffs relatives.

40. Exhaustion of local remedies under the TVPA should be waived where such attempts would be obviously futile.[5] Therefore, Plaintiffs seek damages for this count for One Hundred Million Dollars ($100,000,000).

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

42. Defendants' conduct in causing the sudden and violent deaths of the passengers and crew of Flight PS752 caused Plaintiffs to suffer severe emotional harm, including depression, suicidal ideation, symptoms of post-traumatic stress disorder, and irreparable harm to their relationships with parents and other friends and family.

43. As a state sponsor of terrorism engaging in an act of terror against a civilian aircraft carrying passengers of various nationalities, Plaintiffs assert that Iran intentionally inflicted the emotional distress suffered by Plaintiffs. Not only were the passengers' and crew members' lives unjustly taken, but their friends and family—as well as persons around the world—were placed in a state of fear and emotional distress by this act of terrorism.

44. Plaintiffs seek damages for this count to be calculated at trial.

## COUNT V
## PUNITIVE DAMAGES

45. Plaintiffs repeat and reallege each and every allegation set forth above with like effect as if alleged herein.

46. The actions of the Islamic Republic of Iran, which has been committing, sponsoring, and supporting acts of international terror against international and domestic targets, have led to its decades-long designation as a State Sponsor of Terror.

47. The acts of the Defendants, and each of them carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law

---

[5]. *See Jean v. Dorelien*, 431 F.3d 776, 781-83 (11th Cir. 2005).

that govern the actions of civilized nations. The personal injury and death of Flight PS752's passengers and crew, as well as anguish of Plaintiffs as above described were intended as a result by Iran. Decedents John_Doe_1_Brother and John_Doe_2_Sister were victims of the acts of terror committed by Iran with the material support of each of the Defendants. In accordance with the provisions of 28 U.S.C. §1605A(c), the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

48.   Iran, as a country with a history of human rights abuses and severe violations of international law, has caused the suffering of many who promote internationally acceptable norms and human rights. Many Iranians and foreigners, including Americans, have lost life, liberty, health, and property due to continued acts of terror conducted by Iran.

49.   This case is among few bringing light to domestic acts of terror by Iran against human rights activists and those fighting the brutal regime of Iran. The punitive penalty of such activities should be so high as to prevent Iran from violating international human rights, torturing individuals, taking hostages, and committing extrajudicial killings. Iran has an indefensible record of human right abuses; it has been condemned internationally by each and every United Nations Commission. Unfortunately, there were no penalties imposed on Iran for its violations in similar cases at hand.

50.   Plaintiffs pray that judgment be entered, jointly and severally, against the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps., in the amount of One Billion USD ($1,000,000,000).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against all Defendants and respectfully request the following relief:

51.   Plaintiffs are entitled to compensatory damages for intentional infliction of emotional distress, wrongful death, extrajudicial killing, and assault and battery suffered as a result of aircraft sabotage and deliberate acts of terrorism.

52.   Plaintiffs are entitled to aggravated damages for Defendants' cruelty and acts of terror.

53.   Plaintiffs are otherwise entitled to general damages and all other applicable damages.

54.   Punitive damages should be assessed (under 28 U.S.C. § 1605A(c)).

55.   The Court should award Plaintiffs full costs and attorneys' fees as incidental damages and as otherwise appropriate.

56.     The Court should grant such further and other relief as this Court deems just and proper.

Dated:  October 16, 2020

                                        Respectfully submitted,


                                        Ali Herischi, Esq. (MD0024)
                                        Herischi & Associates LLC
                                        7201 Wisconsin Ave., Suite 440
                                        Bethesda, Maryland 20814
                                        Phone: 301-363-4540
                                        Fax: 301-363-4538
                                        *Attorney for Plaintiffs*